IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

Paraleen Pew, as Trustee for the next of kin of Ronald Pew, and Paraleen Pew, individually,

Plaintiffs,

v.

Pride Mobility Products Corporation, a foreign corporation, and Daniel F. Young Incorporated, a foreign corporation,

Defendants.

Civil No. _____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiffs the next of kin of Ronald Pew and Paraleen Pew, for their Complaint against Defendants Pride Mobility Products Corporation (hereinafter referred to as "Pride Mobility") and Daniel F. Young Incorporated (hereinafter "DF Young"), hereby respectfully alleges as follows:

1. This case arises out of personal injuries sustained by Ronald Pew while using a Perfect Sleep Chair manufactured by Defendant Pride Mobility and delivered, unpacked, assembled, and tested at the Pew residence by Defendant DF Young. On May 4, 2018, Ronald Pew was reclined in the Perfect Sleep Chair when the back rest of the chair separated from the base and folded completely over to the floor in the middle of the night. This movement slid Ronald Pew over the top of the chair and pinned him against the wall with his neck and head jammed for over 15 minutes. As a result of chair separation caused by the failure of component parts of the chair's brackets and safety pins and/or a failure to properly assemble and test the chair upon delivery, Mr. Pew sustained significant neck and head injuries.

2. The Pew's purchased the Perfect Sleep Chair from their home at 3855 Huntington Lane NW in Rochester, Minnesota after seeing a local advertisement in a magazine. The Perfect

1

Sleep Chair was later delivered and assembled at the same address in Rochester, MN where it later broke and caused injury to Mr. Pew.

3. The chair separation that caused Mr. Pew's injuries was the result of a defective and unreasonably dangerous chair and bracket design that was known to cause similar separation issues. Defendant Pride Mobility failed to properly design, manufacture, test and inspect the chair and bracket assemblies, and as a result, is strictly liable for all harms and losses suffered by Plaintiffs.

4. Defendant DF Young's fundamental and inexcusable fault implicates systemic failures in delivery, assembly, training, inspection, and testing. Their failure to install the KD Clip Securement Mech Kit, which are bolts that would prevent the back rest from seperating from the base brackets, was a direct cause of the injuries sustained by Ronald Pew.

5. As a result of the May 4, 2018, incident, Ronald Pew sustained significant neck injuries that caused a head drop chin-on-chest deformity with severe dysphagia. Ronald Pew later died from a cause unrelated to those injuries

6. The next of kin of Ronald Pew bring this action through appointed Trustee Paraleen Pew (surviving spouse) pursuant to Minnesota Statute § 573.02 Subd. 2 and 3 for special damages arising out of the injury to Ronald Pew caused by the wrongful acts or omissions of Defendants Pride Mobility and DF Young.

7. As a direct result of Defendants' negligence, Plaintiff Paraleen Pew (individually) has incurred a loss of the society, companionship and consortium of her husband, Ronald Pew, because of the injuries he sustained in the May 4, 2018, incident.

## PARTIES AND JURISDICTION

8. At all relevant times herein, Paraleen Pew and the next of kin of Ronald Pew are United States citizen and residents of the State of Minnesota, with principal residences in Rochester, Minnesota.

9. At all relevant times herein, and upon information and belief, Defendant Pride Mobility had a principal place of business address of 401 York Ave Duryea, Pennsylvania. Their board of directors/ officers address for service of process is listed as 182 Susquehanna Avenue, Exeter, PA 18643-2653 through the Pennsylvania Secretary of State.

10. At all relevant times herein, and upon information and belief, Defendant DF Young had a principal business address of 1235 Westlakes Drive, Suite 255, Berwyn, Pennsylvania. Their registered agent is listed as CT Corporation System Philadelphia for service of process through the Pennsylvania Secretary of State.

11. Defendant Pride Mobility is engaged in the business of designing, manufacturing, assembling, marketing, distributing and/or selling Power Lift Recliners that are used throughout the United States, including the Perfect Sleep Chair, model NM1652, Serial # ZA433817663MMO involved in the May 4, 2018, incident.

12. Defendant DF Young is in the business of providing shipping and logistical services throughout the United States, including the "White Glove Delivery" of the Perfect Sleep Chair, Model NM1652, Serial # ZA433817663MMO involved in the May 4, 2018, incident. According to their website; "dfYOUNG provides national freight distribution programs and (2) man white glove delivery service, providing coverage of the entire United States in support of medical and life sciences/pharmaceutical applications. With dfYOUNG's extensive project management experience and programs detailed to meet individual customer requirements, they develop detailed

Work Instructions and SOP documents (Standard Operating Procedures) on a project by project basis, to ensure consistency of performance."

13. The United States District Court for the District of Minnesota has personal jurisdiction over Defendants Pride Mobility and DF Young, who are both subject to Minnesota's long-arm jurisdiction. Both Defendants deliver products into the stream of commerce with the expectation that they will be purchased throughout the United States and should have expected that their acts and omissions would have consequences within the United States, including in the State of Minnesota.

14. Jurisdiction in this matter is based on diversity of citizenship pursuant to 28 U.S.C. § 1332 and the amount in controversy, exclusive of interest and costs, is greatly in excess of $75,000.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## THE CHAIR INCIDENT OF NOVEMBER 5, 2018

16. On December 14, 2017, Mr. Pew and his wife purchased the Perfect Sleep chair, Model NM1652, Serial # ZA433817663MMO from Pride Mobility. As a part of that purchase, "white glove delivery" was included with the shipping charges and guaranteed "Professionals will deliver the chair to the exact spot in your home you want it, unpack it, inspect it, test it, position it, and even carry the packaging away!"

17. The Perfect Sleep chair was later delivered to the Pew's residence by DF Young employees where they unpacked and assembled the chair back to the base, tested the remote to ensure it operated the chair, and left with the packaging.

18. In the early morning hours of May 4, 2018, Mr. Pew was reclined in the chair when the back rest of the chair gave way and folded completely over to the floor in the middle of the night.



19. When the chair back folded over, it slid Mr. Pew over the top of the chair and pinned him against the wall with his neck and head jammed for over 15 minutes. His legs were laying across the back rest of the chair up in the air and since he was helpless, he yelled for help most of that time.

20. Plaintiff Parleen Pew, who was asleep in the other room was awaken to his calls for help. Parleen had to sit on the floor and brace her feet against the fireplace brick and use her hands to try and pull the chair out from under Ron.

21. The sudden separation of the chair back from the chair base caused significant neck injuries to Ronald Pew.

## THE PERFECT SLEEP CHAIR

22. The Perfect Sleep Chair (shown below) was manufactured and sold to the Pews by Pride Mobility. The Pews found the Perfect Sleep Chair through the below magazine advertisement.



23.     Defendant DF Young provided the "White Glove Delivery" of The Perfect Sleep chair to the Pew's residence. DF Young employees unpacked and assembled the chair back to the base, tested the remote to ensure it operated the chair, and left with the packaging.

24.     To properly assemble the Perfect Sleep Chair, the instructions require the chair back to be assembled to the base by sliding the KD sleeves on the chair back over the KD brackets attached to the chair base and pushing until a click is heard. Then, the KD Clip Securement Mech Kit consisting of a bolt and washer is to be installed through the KD bracket and sleeve once assembled as shown below:



25.     The images below depict the KD Clip Securement Mech Kit, the bolts, washers, and tool used to secure the KD Clip sleeves and bracket to prevent separation.



26. The images below show the KD Clip Securement Kit that was included with the subject chair that was delivered to the Pew residence. The kit is inconspicuously located inside of the chair back and was stapled to the chair backs inner wood structure.



27. Defendant DF Young failed to install the KD Clip Securement Mech Kit when it delivered and assembled the subject Perfect Sleep Chair at the Pew residence. As seen in the above photographs, the kit was never opened or removed from the chair back. The below photographs further show the bolt and washers were never installed through the chair back which would have pushed through the fabric in the center sleeve hole if correctly installed.



28. Defendant DF Young's failure to properly assemble, safety test, and/or inspect the lift chair caused the sudden, catastrophic separation of the chair back from the chair base on May 4, 2018, resulting in the significant injuries sustained by Ronald Pew.

29. Upon information and belief, Defendant Pride Mobility was aware of product defects, manufacturing defects, and design defects with the lift chair causing the back to separate from the base prior to May 4, 2018, and failed to warn.

## DAMAGES

30. As a direct and proximate result of the May 4, 2018, lift chair separation incident, Ronald Pew sustained severe neck injuries which permanently scarred and disfigured his body. The catastrophic injuries he suffered caused him to endure unimaginable pain and suffering and other special damages and pecuniary losses, as outlined herein.

31. Prior to his death, Ronald Pew endured:

    a. Dysphagia.

    b. Percutaneous endoscopic gastrostomy (PEG) placement.

    c. Significant aspiration.

    d. Head drop chin-on-chest deformity.

    e. C4-C6 ACDF and C2-T5 posterior instrumented fusion complicated by airway edema due to intraoperative endotracheal tube movement and anticipated acute blood loss anemia.

32. The injuries that Ronald Pew suffered in the May 4, 2018, incident had a direct and significant impact on his wife. Ronald was completely dependent on Paraleen who took on the responsibility of 24/7 complete care giver for him. This including feeding him through the use of a feeding tube, cleaning and replacing his feeding tube to keep her husband alive, transportation for Ron since he could no longer drive himself following his injuries and the multiple surgeries,

33. In addition to being his 24/7 personal caregiver, Paraleen Pew also had to assume all of the household duties required to keep their home functioning. The neck injury and chin drop deformity Ron sustained left him unable to stand upright or lift his head up to look straight forward which severely limited his ability to help his wife with even the simplest of tasks like doing the dishes. Ron was unable to do outside maintenance like mowing, trimming, and snow removal so those all had to be completed by Paraleen.

34. Paraleen Pew had to give up several hobbies she enjoyed together with her husband because he was unable to travel and required round the clock care. These included travel, use of a timeshare they own in Florida, dining out, card club, coffee club, parades, the Shriners Club, and the local classic car club.

35. The medical bills and related expenses Ronald Pew has sustained are in excess of $385,000 prior to his death from an unrelated illness.

36. As a direct and proximate result of Ronald Pew's injuries from the lift chair separation, Plaintiffs have sustained the following items of damages, among others, for which Plaintiffs are entitled to compensation:

    a. Past, and present hospital, medical, pharmacy and rehabilitation care and treatment expenses.

    b. Past and present loss of enjoyment of life with Ronald Pew.

    c. Past, present and future loss of consortium.

    d. Other economic or out-of-pocket losses to be determined.

37. As a result, Plaintiffs have sustained losses, injuries and damages in an amount vastly in excess of Seventy-Five Thousand Dollars ($75,000.00).

## JURY TRIAL DEMAND

38. Plaintiffs demand a jury trial as to all issues of fact herein.

## COUNT ONE
## NEGLIGENCE – DESIGN, MANUFACTURE AND WARNINGS

39.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

40.     Defendant Pride Mobility is involved in the business of designing, manufacturing, distributing, testing and inspecting lift chair assemblies, including but not limited to, the Perfect Sleep Chair that was involved in the May 4, 2018, injury incident.

41.     Defendant Pride Mobility knew, or in the exercise of ordinary and reasonable care should have known, of the significant dangers posed by a defective and improperly designed lift chair, including that a separation of the chair back from the chair base could result in catastrophic consequences.

42.     Defendant Pride Mobility knew, or in the exercise of ordinary and reasonable care should have known, that the subject sleep chair was defective and unreasonably dangerous for the use and purpose for which it was intended and lacked adequate warnings.

43.     At all times material herein, Defendant Pride Mobility owed certain duties to persons who could foreseeably be harmed by a defective and improperly designed sleep chair, including the extreme risk of harm resulting from a separation of the chair back from the chair base.

44.     At all times material herein, Defendant Pride Mobility had a duty to use reasonable care in the design, manufacture, testing and inspection of the lift chair, including having safeguards in place to prevent the risk of separation of the chair back from the base, and had a duty to provide reasonably adequate warnings and instructions to all those who could foreseeably be impacted by a defective and improperly designed lift chair, including warnings regarding the risk of separation of the chair back from the base.

45. Notwithstanding such duties and obligations, Defendant Pride Mobility failed to exercise reasonable care in the following ways, among others:

   a. Failing to follow recommendations, requirements, standards, guidelines and regulations and/or recommended practices regarding proper selection, assembly, testing and inspection of the subject lift chair;

   b. Failing to properly engineer and manufacture the lift chair;

   c. Failing to follow recommendations, requirements, standards, guidelines and regulations and/or recommended practices regarding appropriate warnings, instructions and safety precautions to be provided to purchasers, installers and end users of such lift chair;

   d. Failing to use proper components in the lift chair to ensure that the chair back could not separate from the chair base under the conditions which existed on May 4, 2018;

   e. Failing to reasonably warn end-users of the lift chair about the extreme danger resulting from a chair back separation;

   f. Failing to properly instruction and/or provide adequate instructions for the sale and proper assembly and use of the lift chair;

   g. Failing to design the lift chair in such a manner to ensure that the chair back could not accidentally separate from the chair base under the conditions which existed on May 4, 2018;

   h. Designing, manufacturing, distributing, selling, and/or supplying a product that was unreasonably dangerous;

   i. Designing, manufacturing, distributing, selling, and/or supplying a product which failed to contain elements necessary to make the lift chair safe for its intended use and/or contained elements which made the lift chair unsafe for its intended use;

   j. Designing, manufacturing, distributing, selling, and/or supplying a product that posed an unreasonable risk that the chair back could separate from the chair base;

   k. Failing to implement adequate and necessary policies concerning the inspection and testing of lift chair;

   l. Failing to adequately warn of the risk of separation of the chair back from the chair base and the risk of this separation causing injury;

      m.    Failing to properly train employees and personnel involved in the manufacture, design, testing, assembly and inspection of the lift chair;

      n.    Failing to utilize proper testing and inspection procedures related to the lift chair before placing it in the stream of commerce.

46.    As a direct and proximate result of Defendant Pride Mobility's carelessness, negligence and other liability-producing acts and omissions as outlined herein, Ronald Pew suffered serious, severe and disabling injuries including, but not limited to, serious neck injury and chin-on-chest deformity, as well as other injuries, the full extent of which are not yet known, some or all of which are permanent in nature.

47.    As a direct and proximate result of Defendant Pride Mobility's carelessness, negligence and other liability-producing acts and omissions, Ronald Pew has in the past required medical treatment and care, and has incurred the cost of medicines, medical care, hospitalizations, treatment, testing, rehabilitation, and other attempts to alleviate and/or cure his condition.

48.    As a direct and proximate result of Defendant Pride Mobility's carelessness, negligence and other liability-producing acts and omissions, Plaintiff Leon Nelson has in the past and will in the future suffer pain, scarring, disfigurement, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activities and pleasures of life, as well as other intangible losses.

49.    As a result, Plaintiffs have sustained losses, injuries and damages in an amount vastly in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT TWO
### STRICT LIABILITY – DESIGN, MANUFACTURE AND WARNING

50. Plaintiffs re-allege and incorporate herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

51. At all material times herein, Defendant Pride Mobility was engaged in the business of designing, manufacturing, testing, inspecting, distributing, supplying and/or selling lift chairs, including the Perfect Sleep Chair which caused injury to Ronald Pew on May 4, 2018.

52. The lift chair involved in the May 4, 2018, explosion was designed, manufactured, distributed, tested, inspected, sold, supplied and/or placed in the general stream of commerce by Defendant Pride Mobility.

53. The subject lift chair was expected to and did reach users and consumers without substantial change in the condition in which it was designed, manufactured, distributed, tested, inspected, assembled, sold and/or supplied.

54. At all material times herein, the subject lift chair was used as it was intended to be used or in a manner that Defendant Pride Mobility could have reasonably anticipated.

55. Defendant Pride Mobility had a duty to provide reasonably adequate warnings to those who use their products.

56. The subject lift chair was designed, manufactured, sold and/or supplied by Defendant Pride Mobility in a defective and unreasonably dangerous condition and with inadequate warnings, as detailed in the foregoing paragraphs of this Complaint.

57. The defects in the subject lift chair existed at the time it left Defendant Pride Mobility's possession or control and were such that the lift chair was defective, unreasonably dangerous and unsuitable for use as a 3 position lift chair.

58. The lift chair designed, manufactured, distributed, tested, inspected, sold and/or supplied by Defendant Pride Mobility was defective due to inadequate warnings or instructions because Pride Mobility knew or should have known through testing, scientific knowledge or otherwise that the subject lift chair created a high risk of bodily injury and serious harm to all those who could foreseeably be impacted by separation of the chair back from the chair base.

59. The lift chair designed, manufactured, distributed, tested, inspected, sold and/or supplied by Defendant Pride Mobility was defective and unreasonably dangerous in design, manufacture or formulation in that, when it left the hands of Defendant Pride Mobility, the lift chair had not been adequately inspected or tested and posed a risk of serious bodily injury from a resulting failure of the lift chair or its component parts.

60. As a direct and proximate result of the defective and unreasonably dangerous lift chair designed, manufactured, distributed, tested, inspected, sold and/or supplied by Defendant Pride Mobility, which directly and proximately caused the separation of the chair back from the base, Ronald Pew was severely injured on May 4, 2018, and has sustained significant injuries and damages.

61. The injuries sustained by Plaintiffs as a result of the separation of the chair back from the base could and should have been reasonably foreseen by Defendant Pride Mobility.

62. Defendant Pride Mobility is strictly liable for the injuries and damages suffered by Plaintiffs, as described in the foregoing paragraphs.

## COUNT THREE
## BREACH OF WARRANTY

63. Plaintiffs re-allege and incorporate herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

64. As a manufacturer and seller of the Perfect Sleep Chair that separated and caused the injury on May 4, 2018, Defendant Pride Mobility expressly and impliedly warranted that the lift chair assembly was safe to use and was reasonably fit for the general uses and purposes for which it was sold, that it was properly tested and inspected and that it was free of any defects that would create an unreasonable risk of injury to all those who could foreseeably be impacted by the use of the chair and that Defendant Pride Mobility had fully and properly warned and/or educated potential users of the risks posed by the lift chair, including of the separation of chair back from the base.

65. Upon information and belief, prior to May 4, 2018, Defendant Pride Mobility made express or implied representations regarding the safety of its products and its practices, including that the subject lift chair was safe for the use for which it was intended.

66. Defendant Pride Mobility breached these implied and/or express warranties in that the lift chair assembly, which was part of the incident on May 4, 2018, was not safe or fit for its intended use, was improperly tested or inspected and was otherwise defective and unreasonably dangerous.

67. Plaintiffs Ronald and Paraleen Pew were third-party beneficiaries to the express or implied warranties Defendant Pride Mobility made to others.

68. Plaintiffs and others to whom Defendant Pride Mobility made express or implied warranties, relied on the skill and judgment of Defendant Pride Mobility with regard to the manufacture, design, inspection and testing of the subject lift chair and relied on the express or implied warranties made by Defendant Pride Mobility.

69. As a direct and proximate result of Defendant Pride Mobility's breaches of express or implied warranties, Ronald Pew was seriously injured on May 4, 2018, and Plaintiffs suffered the injuries and damages described in the foregoing paragraphs.

### COUNT FOUR
### NEGLIGENCE

70. Plaintiffs re-allege and incorporate herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

71. Defendant DF Young had a duty to use reasonable care when delivering, unpacking, assembling, and testing the subject Perfect Sleep Chair at the Pew residence.

72. Defendant DF Young actions and/or inactions in failing to properly assembly, test, or otherwise ensure the chair was safe for use created an unreasonable risk of harm to persons that Defendant DF Young knew, or should have known, would be using the subject lift chair.

73. As a direct and proximate result of the negligence of Defendant DF Young, Ronald Pew was seriously injured on May 4, 2018, causing Plaintiffs to suffer the injuries and damages described in the foregoing paragraphs.

### COUNT FIVE
### SURVIVAL CLAIM

74. Plaintiffs re-allege and incorporate herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

75. As a direct and proximate result of the wrongful acts or omissions of Defendants Pride Mobility and DF Young outlined in the preceding Paragraphs of this Complaint, Ronald Pew was seriously injured on May 4, 2018.

76. On October 11, 2021, Ronald Pew died from a cause unrelated to the injuries caused to him by the wrongful acts or omissions of Defendants Pride Mobility and DF Young.

77. Following Ronald Pew's death, Paraleen Pew petitioned the Minnesota District Court pursuant to Minnesota Statute § 573.02 Subd. 3, to appoint her as the surviving spouse to act as trustee to commence or continue an action for special damages arising out of the injury to Ronald Pew that he would have maintained had he lived. The Minnesota District Court appointed Paraleen Pew as Trustee by Court Order on December 14, 2021. (see attached Ex. A)

78. Pursuant to Minnesota Statute § 573.02 Subd. 2, Paraleen Pew, as Trustee for the next of kin of Ronald Pew bring this action for special damages arising out of the injury to Ronald Pew in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT SIX
## LOSS OF CONSORTIUM

79. Plaintiffs re-allege and incorporate herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

80. As a direct and proximate result of the wrongful acts or omissions of Defendants Pride Mobility and DF Young outlined in the preceding Paragraphs of this Complaint, Plaintiff Paraleen Pew (individually) has incurred a loss of the society, companionship and consortium of her husband, Ronald Pew, because of the injuries he sustained in the May 4, 2018, incident.

81. As a result, Plaintiff Paraleen Pew (individually) has sustained financial losses, loss consortium and other special damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE,** Plaintiffs pray for judgment against Defendants individually, and/or jointly and severally, as follows:

    A.    As to all counts, for judgment against Defendants in amounts to be proven at trial, such amounts in excess of the jurisdictional minimum limits of this court, so as to constitute just, reasonable and adequate compensation of

Plaintiffs for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiffs as the direct and proximate result of the acts and omissions of Defendants;

B. For the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served;

C. For pre-judgment and post-judgment interest as allowed by law;

D. For attorneys' fees, expenses and costs of this action, as allowed by law; and

E. For such other and further relief as the Court deems just and proper.

Dated: May 3, 2022

**PATTERSON DAHLBERG**

By: /s/ Jeremy L. Lampman
Paul R. Dahlberg, #228217
Jeremy L. Lampman, #393215
Attorneys for Plaintiff
3014 Allegro Park Lane SW
Rochester, MN 55902
(507) 424-3000
p.dahlberg@pattersondahlberg.com
j.lampman@pattersondahlberg.com